UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

VALENTINA RODRIGUEZ,                        Civil Index No.: 1:17-cv-03691-BMC

                        Plaintiff,

            -against-

BRITISH AIRWAYS PLC and CATHAY
PACIFIC AIRWAYS LIMITED,

                        Defendants.

-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT CATHAY PACIFIC AIRWAYS LIMITED**


CLYDE & CO US LLP

The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Phone:  (212) 710-3900
Fax:   (212) 710-3950

*Attorneys for Defendant*
CATHAY PACIFIC AIRWAYS LIMITED

Defendant Cathay Pacific Airways Limited ("Cathay") respectfully submits this memorandum of law in support of its motion for summary judgment seeking to dismiss plaintiff's claims, and the cross-claims of defendant British Airways PLC ("British Airways") as against Cathay or, in the alternative, seeking indemnification against plaintiff's claims from British Airways.

## PRELIMINARY STATEMENT

Plaintiff Valentina Rodriguez commenced this action against Cathay and British Airways seeking damages for personal injuries she allegedly sustained when she tripped and fell while walking from a jet bridge[1] into a Cathay aircraft parked at a terminal at JFK International Airport ("JFK Airport"). Plaintiff, who was working as an aircraft cleaner, alleges that she tripped because of a height differential of approximately four inches between the floor of the jet bridge and the bottom of the aircraft's door. Plaintiff alleges that the four-inch differential, which was caused by the positioning of the moveable jet bridge relative to the parked aircraft, constituted a dangerous and defective condition.

Cathay cannot be held liable for plaintiff's alleged injuries because it did not own the jet bridge, and had no involvement in the process by which it was positioned next to the parked Cathay aircraft. The jet bridge was owned, and exclusively operated and controlled, by British Airways. Moreover, the written agreement between Cathay and British Airways concerning the use of the jet bridge to service Cathay aircraft contains an indemnification provision running in favor of Cathay. Accordingly, no basis exists for plaintiff's claims, or British Airways' cross-claims, as against Cathay and, in any event, Cathay is entitled to indemnification from British Airways against plaintiff's claims.

---

[1] A jet bridge, also known as a "jetway," is part of the terminal building. It is a "moveable arm" that extends from the terminal building to the parked aircraft, and enables passengers to enter and exit the aircraft. Cathay's Rule 56.1 Statement of Undisputed Material Facts ¶ 7; Deposition of Stephen Manswell ("Manswell Dep."), p. 17.

## STATEMENT OF FACTS

Cathay is a commercial air carrier that operates flights to and from JFK Airport. Cathay's Rule 56.1 Statement of Undisputed Material Facts ("C56.1") ¶ 1; Deposition of James Groark ("Groark Dep."), p. 7. At the time of the accident involved in this case, Cathay operated flights from Terminal 7 at JFK Airport. C56.1 ¶ 2; Affidavit of James Groark ("Groark Aff.") ¶ 3. Cathay did not own or operate Terminal 7. C56.1 ¶ 3; Groark Aff. ¶ 3.

Prior to plaintiff's accident, Cathay and British Airways entered into a written Standard Ground Handling Agreement (the "SGHA") pursuant to which British Airways provided extensive, "turnkey" services to Cathay at Terminal 7. C56.1 ¶ 4; Affidavit of Nicholas Magali ("Magali Aff."), Ex. G (SGHA); Groark Dep., p. 13; Groark Aff. ¶ 2.[2] These services included operation of the gate check-in desks in Terminal 7 which control passenger access to Cathay aircraft parked at those gates, interior cleaning of Cathay aircraft, and control and operation of the jet bridges used by cleaning crews, passengers and other people to gain access to parked Cathay aircraft. C56.1 ¶ 6; Groark Aff. ¶ 4; Magali Aff. Ex. G (SGHA) Annex B1.2, §§ 3.6, 3.11. British Airways subcontracted with plaintiff's employer, Ground Services International ("GSI"), to perform the cleaning services for Cathay aircraft at Terminal 7. C56.1 ¶ 8; Manswell Dep., p. 42; Deposition of Valentina Rodriguez ("Rodriguez Dep."), pp. 13-14.

The jet bridges used to service aircraft parked at Terminal 7, including the jet bridge involved in this litigation, were owned by British Airways, and operated exclusively by British Airways employees acting under the supervision and control of British Airways' management. C56.1 ¶ 9; Groark Aff. ¶ 5. Before being allowed to operate a jet bridge, the British Airways employees undergo classroom and on-the-job training provided by British Airways personnel

---

[2] Cathay was not the only air carrier serviced by British Airways at Terminal 7. British Airways provided similar services to other air carriers that operated at Terminal 7. C56.1 ¶¶ 5, 21; Manswell Dep., pp. 6-7; Groark Aff. ¶ 7.

using British Airways' training materials. C56.1 ¶ 10; Manswell Dep., pp. 8, 10-14, 17-18; Groark Aff. ¶ 5; Magali Aff., Ex. H (British Airways JETBridge JFK Airport Study Guide). This training involved the safety aspects of operating the jet bridge, the physical movement of the jet bridge towards and away from the parked aircraft, and the positioning of the jet bridge relative to the door of the parked aircraft. C56.1 ¶ 11; Manswell Dep., pp. 8, 14, 18-29.

Cathay does not own the jet bridges used at Terminal 7, is not involved in any aspect of the operation of the jet bridges, and is not involved in any aspect of the training or supervision of the British Airways employees who actually operate the jet bridges. C56.1 ¶ 12; Groark Aff. ¶ 6; Groark Dep., p. 14.

The British Airways training materials utilized by British Airways in connection with its operation of the jet bridges provide, *inter alia*, that "the level difference of the aircraft's floor and the jet bridge floor cannot be bigger than four inches." C56.1 ¶ 13; Manswell Dep., p. 22; Magali Aff., Ex. H (British Airways JETBridge JFK Airport Study Guide) § 1.21. Pursuant to that instruction, the British Airways jet bridge operators are trained to position the jet bridge so that its floor is approximately four inches below the door opening of the parked aircraft. C56.1 ¶ 14; Manswell Dep., pp. 18, 22; Magali Aff., Ex. H (British Airways JETBridge JFK Airport Study Guide) § 1.21. The positioning of the jet bridge relative to the aircraft door is controlled entirely by the British Airways employees operating the jet bridge, with no involvement by Cathay. The height differential between the jet bridge and the aircraft door is required to allow the aircraft door to be opened and closed without striking the jet bridge. C56.1 ¶ 15; Groark Aff. ¶ 9; Groark Dep., p. 22.

Because of the weight of the passengers and cargo, the parked aircraft moves up and down as the passengers and cargo exit and enter the aircraft. C56.1 ¶ 16; Groark Dep., pp. 28-29. In order to account for this up and down movement of the parked aircraft, the jet bridge is

equipped with an "auto leveler" that keeps constant the height differential between the jet bridge floor and the aircraft door that is established by the British Airways employee who operates the jet bridge. C56.1 ¶ 17; Manswell Dep., pp. 29-30. The edge of the jet bridge (where it meets the aircraft) is painted bright yellow, in order to provide a visual cue to alert persons entering the aircraft to the height differential between the jet bridge and aircraft door. C56.1 ¶ 19; Manswell Dep., pp. 35-36.

On January 14, 2015, Cathay flight 830 arrived at JFK Airport from Hong Kong and parked at Gate 5 in Terminal 7. C56.1 ¶ 20; Groark Aff. ¶ 7. Cathay did not have exclusive use of Gate 5 in Terminal 7. C56.1 ¶ 21; Groark Aff. ¶ 7. Gate 5 was used by Cathay and other air carriers operating in Terminal 7 including British Airways, Iberia Airlines, Iceland Airlines, Qantas Airlines, Aerolineas Argentinas Airlines, Open Skies Airlines, Qatar Airways and Interjet Airlines. *Id.* And, Cathay also operates its flights from different gates in Terminal 7. *Id.* There were approximately 251 passengers and 18 crew members on board the flight. C56.1 ¶ 22; Groark Aff. ¶ 8. The aircraft had a scheduled "turnaround" of one hour and 45 minutes, during which time the arriving passengers and crew disembarked from the aircraft, and the GSI aircraft cleaners, as well as food caterers, boarded the aircraft to prepare it for its next flight. C56.1 ¶ 23; Groark Dep., pp. 25-26; Groark Aff. ¶ 8.

During the flight turnaround, the GSI cleaners, including plaintiff, used the jet bridge to enter the aircraft. C56.1 ¶ 24; Groark Dep., pp. 26-27. Plaintiff testified that as she walked onto the aircraft from the jet bridge (looking straight ahead, and not down where she was walking), she tripped over the approximately four-inch height differential between the lower jet bridge floor and the higher aircraft door. Rodriguez Dep., pp. 44-46. Immediately before plaintiff's fall, other GSI cleaners had entered the aircraft through the same door without incident. *Id.*, p. 38.

# ARGUMENT

## I

## SUMMARY JUDGMENT STANDARD

To be awarded summary judgment, a defendant must demonstrate that "there is no genuine issue as to any material fact and that [defendant is] entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56(c)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

To defeat a summary judgment motion, the plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ.P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" is insufficient. *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir.2010) (citations and internal quotations omitted). Similarly, implausible alleged facts or bald assertions unsupported by evidence cannot defeat a summary judgment motion. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986). For an issue of fact to be genuine, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

When determining whether there is a genuine issue of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012)(citation and quotation omitted). The Court's role "is not to weigh the evidence or resolve issues of fact" but to decide "whether a rational juror could find in favor of the non-moving part)." *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 254 (2d Cir.2002).

## II

## PLAINTIFF'S CLAIMS AGAINST
## CATHAY SHOULD BE DISMISSED

Plaintiff's claims against Cathay should be dismissed because Cathay did not owe, or

breach, any duty to plaintiff. "To establish a prima facie case of negligence under New York

law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach

thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 286 (2d Cir. 2006) (quoting *Solomon by Solomon v. City of New York*, 66 N.Y.2d 1026,

1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)). Summary judgment in a negligence claim is

available "[w]here proof of any essential element falls short." *Basso v. Miller*, 40 N.Y.2d 233,

386 N.Y.S.2d 564, 352 N.E.2d 868, 873 (1976).

### A. CATHAY DID NOT OWE OR BREACH A DUTY TO THE PLAINTIFF

The threshold question in every negligence case is whether the defendant owed a duty of

care to the plaintiff. The Court may resolve that question on a summary judgment motion. *See*

*Alnashmi v. Certified Analytical Grp., Inc.*, 89 A.D.3d 10, 929 N.Y.S.2d 620, 623 (2d Dep't

2011) ("The existence and extent of a duty is a question of law" that the Court may resolve on a

summary judgment motion) (collecting cases). Here, Cathay did not owe, or breach, a duty to

the plaintiff with respect to the operation of the jet bridge, whether under a premises liability or a

common carrier theory of liability.

#### 1. Cathay Pacific Cannot be Held Liable Under a Premises Liability Theory

"As a general rule, liability for a dangerous or defective condition on real property must

be predicated upon ownership, occupancy, control, or special use of that property." *Suero–Sosa*

*v. Cardona*, 112 A.D.3d 706, 977 N.Y.S.2d 61, 63 (2d Dep't 2013). "Where none of these

factors is present, a party cannot be held liable for injuries caused by a dangerous or a defective

condition." *Id.* New York courts routinely find that no duty of care exists where a defendant does not own, operate, maintain or control the premises where an accident occurred. *See, e.g., Jackson v. Bd. of Educ. of City of New York*, 30 A.D.3d 57, 812 N.Y.S.2d 91, 94 (1st Dep't 2006); *Lopez v. Allied Amusement Shows, Inc.*, 83 A.D.3d 519, 921 N.Y.S.2d 231, 232 (1st Dep't 2011); *Gibbs v. Port Auth. of New York*, 794 N.Y.S.2d 320,322 (1st Dep't 2005).

In this case, plaintiff alleges that it was negligent to position the jet bridge next to the parked Cathay aircraft so that a four-inch gap existed between the jet bridge floor and the aircraft door.[3] Cathay did not own, operate, maintain or control the jet bridge, did not train or supervise the British Airways employees who operated the jet bridge, and did not control the cleaning crew's (including plaintiff's) access to, and use of, the jet bridge. British Airways owned the jet bridge, and British Airways employees, who were trained and supervised by British Airways' management, exclusively operated, controlled and maintained the jet bridge. And, British Airways exercised total control over the process and procedures by which the jet bridge was positioned relative to the parked Cathay aircraft. Cathay simply had nothing to do with the manner in which the jet bridge was positioned next to the parked aircraft.

Moreover, the "special use" doctrine does not apply in this case.

> The special use exception is reserved for situations where a landowner whose property abuts a public street or a sidewalk derives a special benefit from that property unrelated to the public use, and is therefore required to maintain a portion of that property. When considering the doctrine, New York courts have consistently required that before liability can be imposed, the sidewalk must be constructed in a special manner for the benefit of the abutting landowner. Cases applying the doctrine have typically involved the installation of some object in the sidewalk or a variance in the construction of the sidewalk intended specifically to benefit the adjacent owner.

*Diaz v. American Airlines, Inc.,* 2015 WL 4503649, *7 (S.D.N.Y. July 23, 2015) (internal quotations and citations omitted). Here, Cathay is not a landowner, it did not own the jet bridge

(or the terminal of which it is part), and the jet bridge is not a public street or sidewalk that is open to the public and which was constructed in a specific manner for the benefit of Cathay.

Accordingly, no basis exists for plaintiff's claims against Cathay under a premises liability theory because it did not own the jet bridge, and had no involvement in, or control over, the operation of the jet bridge or its placement relative to the parked Cathay aircraft.

### 2. Cathay Had No Duty to Plaintiff under a Common Carrier Liability Theory

New York law, in certain circumstances, imposes a duty on a common carrier to maintain premises that the common carrier does not own. In *Diaz. v. American Airlines*, 2015 WL 4503649 (S.D.N.Y. July 23, 2015), the Court discussed the limited reach of this common carrier duty:

> It is true that the duty of a common carrier with respect to its passengers 'requires not only that it keep the transportation vehicle safe, but also that it maintain a safe means of ingress and egress for the use of its passengers.' *Bingham v. New York City Transit Auth.,* 8 N.Y.3d 176, 832 N.Y.S.2d 125, 864 N.E.2d 49, 51 (2007). In *Schlessinger v. Manhattan Ry. Co.,* the [New York Court of Appeals] held that this duty 'applies not only to such approaches as may have been constructed and owned by the [common carrier], but to those constructed and owned by other persons, if constantly and notoriously used by passengers as a means of approach." 49 Misc. 504, 505, 98 N.Y.S. 840, 841 (App. Term 1906). In *Bingham,* however, the Court of Appeals concluded that, 'the *Schlessinger* rule should be retained, *at least as applied to areas that serve primarily for ingress and egress to a subway or other similar station that is served by a single carrier,"* and declined to extend this duty of care to 'common areas in a multi-carrier facility.' 832 N.Y.S.2d 125, 864 N.E.2d at 52 (emphasis added).

2015 WL 4503649, *7.

As an initial matter, this duty of common carriers should not be extended to the plaintiff, who was not a Cathay passenger, but was the employee of GSI, a British Airways subcontractor, who was retained by British Airways to clean aircraft at Terminal 7. However, even if the Court

---

[3] Plaintiff does not allege that Cathay's aircraft was negligently operated or positioned, or somehow was defective or dangerous. *See* Complaint.

determines that the common carrier duty extends to non-passengers, it still does not apply to Cathay in this case.

Here, the jet bridge did not lead to a "subway or other similar station that is served by a single carrier." At the time of plaintiff's accident, Gate 5 in Terminal 7, and the jet bridge located at that gate, were not used exclusively by Cathay. They were used by a number of different airlines operating flights to and from Terminal 7. The moveable jet bridge involved in this case, which was owned and exclusively operated and controlled by British Airways, and was used in connection with flights operated by different air carriers utilizing Gate 5 in Terminal 7, is in no way similar to fixed steps leading down to a subway station that exclusively serves a single common carrier, *e.g.*, the New York City Transit Authority.

Accordingly, no basis exists for plaintiff's claims against Cathay under a common carrier liability theory.

## B. CATHAY CANNOT BE HELD LIABLE BECAUSE IT DID NOT HAVE NOTICE OF THE ALLEGEDLY DEFECTIVE CONDITION IN THE JET BRIDGE

In the alternative, and assuming that the alleged four-inch height differential constituted a defective and dangerous condition, there still is no basis for plaintiff's claims against Cathay because Cathay did not have notice of the allegedly defective condition. "To impose liability upon a defendant in a trip-and-fall action, there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it." *Dennehy–Murphy v. Nor–Topia Serv. Ctr., Inc.*, 61 A.D.3d 629, 876 N.Y.S.2d 512, 513 (2d Dep't 2009); *see also Castellanos v. Target Dep't Stores. Inc.*, 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013).

As an initial matter, no evidence exists that the four-inch height differential used by British Airways constitutes a dangerous or defective condition. A height differential is required so that the aircraft door can be opened and closed, and also to prevent damage to the aircraft by

allowing for its rise and fall, without contacting the jet bridge, as passengers, cargo, *etc.* are loaded onto and unloaded from the aircraft. Moreover, a bright yellow caution stripe at the end of the jet bridge serves as a visual cue to anyone approaching the door that there is a height differential. That the placement of the jet bridge by British Airways did not create a dangerous condition is further evidenced by the fact that more than 250 people (passengers, crew, cleaners and caterers) other than the plaintiff exited and/or entered that parked aircraft from the jet bridge without incident.

Even assuming *arguendo* that the height differential could be considered a dangerous and defective condition, Cathay cannot be held liable for plaintiff's trip and fall because Cathay did not create the condition. It was created by the British Airways' employees who operated the jet bridge. And, no evidence exists that Cathay had actual or constructive notice of the height differential, or that it had sufficient time to take action to correct that allegedly dangerous condition. To constitute constructive notice, a defect must be visible and apparent, and it must exist for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it. *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837-838, 492 N.E.2d 774, 501 N.Y.S.2d 646 (1986).

No evidence exists to establish that Cathay observed or had knowledge of the alleged height differential prior to the accident, nor does any evidence exist to establish the length of time that the height differential existed before the accident. Accordingly, the Complaint should be dismissed as against Cathay.

### III

### BRITISH AIRWAYS' CROSS-CLAIMS AGAINST CATHAY SHOULD BE DISMISSED

British Airways has asserted cross-claims against Cathay for common law contribution and/or indemnification. As discussed above, Cathay did not own the subject jet bridge, did not

train or supervise the British Airways employees who operated the jet bridge, and otherwise had

no involvement in the operation, use, control or maintenance of the jet bridge.  Accordingly, no

basis exists for British Airways' cross-claims against Cathay, and they should be dismissed.

IV

**CATHAY IS ENTITLED TO
INDEMNIFICATION FROM BRITISH AIRWAYS**

"A party's right to indemnification may arise from a contract or may be implied 'based

upon the law's notion of what is fair and proper as between the parties.'" *McCarthy v. Turner*

*Const., Inc.*, 17 N.Y.3d 369, 374-75, 929 N.Y.S.2d 556 (2011)(citation omitted).  In the event

Cathay is found to be vicariously liable for plaintiff's alleged injuries, it is entitled to summary

judgment on its cross-claim against British Airways for common law indemnification.  In the

event it is determined that Cathay's active negligence caused or contributed to plaintiff's injuries,

then it is entitled to contractual indemnification from British Airways under the terms of the

SGHA in effect between Cathay and British Airways.

### A. CATHAY IS ENTITLED TO COMMON LAW INDEMNIFICATION FROM BRITISH AIRWAYS

"Common-law indemnification is generally available in favor of one who is held

responsible solely by operation of law because of his relation to the actual wrongdoer." *Id.*, 17

N.Y.3d at 375 (quotation and citation omitted).  Indemnification obligations are imposed "upon

those actively at fault in bringing about the injury." *Id.*  "Liability for indemnification may only

be imposed against those parties ... who exercise actual supervision" over the injury-producing

work. *Id.* at 378.

It is undisputed that British Airways owned the jet bridge, trained, supervised and

directed its employees who operated the jet bridge, and that it exclusively controlled its operation

and placement relative to the parked Cathay aircraft.  Cathay simply had no involvement in the

process by which the jet bridge was operated and positioned next to the parked aircraft.
Accordingly, in the event Cathay somehow is found to be vicariously liable by operation of law
for plaintiff's alleged injuries, it is entitled to summary judgment on its cross-claim for common
law indemnification against British Airways.

### B. CATHAY IS ENTITLED TO CONTRACTUAL INDEMNIFICATION FROM BRITISH AIRWAYS

Article 8.4 of the SGHA that was in effect between Cathay and British Airways provides,
in relevant part, as follows:

> The Handling Company [British Airways] shall not make any claim against the
> Carrier [Cathay] and shall indemnify it (subject as hereinafter provided) against
> any legal liability for claims or suits, including costs or expenses incidental
> thereto, in respect of...injury to...any employees of the Handling Company, its
> servants, agents or subcontractors...arising from an act or omission of the Carrier
> in the performance of this Agreement unless done with intent to cause...injury or
> loss or recklessly and with knowledge that...injury or loss would probably result.

Under the terms of the Standard Ground Handling Agreement, British Airways is
obligated to indemnify Cathay against any legal liability with respect to this action brought by
the plaintiff, who was an employee of British Airways' subcontractor, GSI.

As discussed above, Cathay had no involvement in the operation or placement of the jet
bridge, and so no basis exists for plaintiff's claims that Cathay's negligence caused or
contributed to plaintiff's fall. However, in the event it is determined that plaintiff's injuries
somehow arose from an "act or omission" of Cathay, Cathay would be entitled to contractual
indemnification from British Airways under Article 8.4 of the SGHA.[4]

---

[4] There is no evidence, or allegation, that Cathay acted "with intent to cause...injury or loss or recklessly and with
knowledge that...injury or loss would probably result."

## CONCLUSION

Cathay respectfully requests that this Court issue an Order dismissing plaintiff's claims and British Airways' cross-claims as against Cathay or, in the alternative, granting Cathay summary judgment on its cross-claims for indemnification against British Airways, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      October 20, 2017

                  CLYDE & CO US LLP

                  By: _____
                      Christopher Carlsen
                      Nicholas Magali
                  The Chrysler Building
                  405 Lexington Avenue, 16th Floor
                  New York, New York 10174
                  (212) 710-3900

                  *Attorneys for Defendant Cathay Pacific*
                  *Airways Limited*