UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

VALENTINA RODRIGUEZ,                     :

                  Plaintiff,        :

                                 :

      - against -                              :

 

BRITISH AIRWAYS PLC and CATHAY           :
PACIFIC AIRWAYS LIMITED,

                                 :

               Defendants.         :

-------------------------------------------------------------------x

Civil Action No.:
17-cv-03691-BMC
District Judge:
Hon. Brian M. Cogan

 

 

## MEMORANDUM OF LAW IN SUPPORT OF
## BRITISH AIRWAYS PLC'S MOTION FOR SUMMARY JUDGMENT

CONDON & FORSYTH LLP
7 Times Square
New York, NY 10036
(212) 490-9100
Anthony U. Battista, Esq.
Jean Cooper Rose, Esq.

Attorneys for Defendant
*British Airways PLC*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................ii

Preliminary Statement .......................................................................................... 1

Statement of Jurisdiction ...................................................................................... 2

Statement of Facts ................................................................................................. 2

Standard of Review ............................................................................................... 4

Argument ............................................................................................................... 5

    I.     PLAINTIFF CANNOT ESTABLISH THAT BRITISH
           AIRWAYS OWED HER A DUTY........................................................ 5

    II.    PLAINTIFF'S CONDUCT WAS AN UNFORESEEABLE
           SUPERSEDING EVENT THAT BREAKS THE CHAIN OF
           CAUSATION........................................................................................ 13

Conclusion ........................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................................... 4

*Beyer v. County of Nassau,* 524 F.3d 160 (2d Cir. 2008) ........................................ 4

*Celotex Corp. v. Carett,* 477 U.S. 317 (1986) ........................................................ 4

*Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 386 (S.D.N.Y. 2015).........6-7, 11

*Glassberg v. Staples the Office Superstore E., Inc.,* No. 08-CV-2132 KAM
JMA, 2010 WL 3924682 (E.D.N.Y. Sept. 13, 2010), *report and
recommendation adopted,* No. 08-CV-2132, 2010 WL 3909206 (E.D.N.Y.
Sept. 29, 2010)............................................................................................................ 10

*Matteo v. Kohl's Dep't Stores, Inc.,* No. 09 CIV. 7830 RJS, 2012 WL
760317 (S.D.N.Y. Mar. 6, 2012), *aff'd,* 533 F. App'x 1 (2d Cir. 2013) ................. 11

*Payne v. United States*, 359 F.3d 132 (2d Cir. 2004) ............................................. 11

*Rouse v. Kuwait Airways Co., et al.*, No. 14-cv-1345WFK-JO (E.D.N.Y.
September 29, 2017) (D.J. Kuntz)........................................................................13-14

*Saltz v. Wal-Mart Stores, Inc.*, No. 10 CIV. 4687 NRB, 2012 WL 811500,
(S.D.N.Y. Mar. 7, 2012), *aff'd,* 510 F. App'x 68 (2d Cir. 2013).....................5-6, 11

*Suarez v. City of N.Y.*, No. 11-CV-05812, 2015 WL 1539737 (E.D.N.Y.
Mar. 31, 2015) ............................................................................................................. 4

*Yoly Farmers Corp. v. Delta Air Lines, Inc.*, No. 15 CIV. 2774 BMC, 2015 WL
4546744 (E.D.N.Y. July 28, 2015) (D.J. Cogan)...................................................4-5

## STATE CASES

*Abraido v. 2001 Marcus Ave., LLC,* 4 N.Y.S.3d 43 (1st Dep't 2015) ................... 10

*Barakos v. Old Heidelberg Corp.*, 43 N.Y.S.3d 324 (1st Dep't. 2016).................... 7

*Basso v. Miller*, 386 N.Y.S.2d 564 (1976) ............................................................... 10

*Brown v. Melville Indus. Associates*, 823 N.Y.S.2d 697 (2d Dep't 2006) ............... 6

*Bryant v. Superior Computer Outlet, Inc.*, 772 N.Y.S.2d 529 (2d Dep't 2004) ............................................................................................................... 10

*Cohen v. Shopwell, Inc.*, 765 N.Y.S.2d 40 (1st Dep't 2003) ..................................... 9

*Espinoza v. Hemar Supermarket, Inc.*, 841 N.Y.S.2d 680 (2d Dep't. 2007) .......... 10

*Haughton v. T & J Elec. Corp.*, 765 N.Y.S.2d 664 (3d Dep't 2003) ................. 13-15

*MacDonald v. City of Schenectady*, 761 N.Y.S.2d 752 (3d Dep't 2003) ................. 9

*Maraia v. Church of Our Lady of Mount Carmel*, 828 N.Y.S.2d 525 (2d Dep't 2007) ............................................................................................................... 10

*Peralta v. Henriquez*, 760 N.Y.S.2d 741 (2003) ...................................................... 9

*Solomon v. City of New York*, 66 N.Y.2d 1026 (1985) ............................................. 5

*Stephen v. Sico, Inc.,* 654 N.Y.S.2d 449 (3d Dep't 1997) ...................................... 13

*Stern v. Costco Wholesale*, 882 N.Y.S.2d 266 (2nd Dep't. 2009) ........................... 7

*Tagle v. Jakob*, 737 N.Y.S.2d 331 (2001) ................................................................ 6

*Varon v. N.Y.C. Dep't of Educ.,* 998 N.Y.S.2d 433 (2d Dep't 2014) ................. 6, 10

## FEDERAL STATUTES AND TREATIES

28 U.S.C. § 1332 ...................................................................................................... 2

28 U.S.C. § 1441 ...................................................................................................... 2

Fed. R. Civ. P. 56 .................................................................................................. 1, 4

# PRELIMINARY STATEMENT

Defendant British Airways, PLC ("British Airways"), by and through its attorneys Condon & Forsyth LLP, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure for an Order granting summary judgment and dismissing all claims brought by Plaintiff Valentina Rodriguez ("Ms. Rodriguez") because the undisputed facts show that she tripped over an open and obvious, normal condition.

Ms. Rodriguez alleges she sustained severe injuries when she tripped over the lip of an aircraft door as she stepped from a jet bridge onto a Cathay Pacific aircraft. Ms. Rodriguez alleges that British Airways is liable because it negligently positioned the jet bridge, and it failed to warn Ms. Rodriguez of the alleged condition.

Ms. Rodriguez and a non-party eyewitness testified that the jet bridge was positioned by British Airways staff approximately four inches below the lip of the aircraft door. Testimony by both defendants and a training video show that positioning a jet bridge approximately four inches below the lip of an aircraft door is standard practice. Additionally, just prior to the accident, more than 250 passengers and crew members deplaned without incident.

All of the evidence shows that the jet bridge was correctly positioned and that the approximate four-inch height differential between the jet bridge to aircraft floor was a normal, open and obvious condition that Ms. Rodriguez navigated many times each day over the past fifteen years that she had worked as an aircraft cleaner at John F. Kennedy International Airport ("JFK"). There is no evidence of negligence on the part of either defendant and the action should be dismissed.

## STATEMENT OF JURISDICTION

Plaintiff commenced this action in the Supreme Court of the State of New York, County of Queens. It was timely removed by British Airways under 28 U.S.C. § 1441. *See* Dkt. No. 1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Ms. Rodriguez, British Airways, and Cathay Pacific Airlines Limited ("Cathay Pacific") and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## STATEMENT OF FACTS

British Airways leases Terminal 7 from the Port Authority of New York and New Jersey and operated the jet bridge in question. [1] *See* Rule 56.1 Statement at ¶ 2 (Deposition of Stephen Manswell taken on September 26, 2017 ("Manswell") at 36:9-37:12, 38:23-39:13, annexed to the Declaration of Anthony U. Battista ("Battista Decl.") as Exhibit C).

BA uses internal training policies and guidelines, developed with the assistance of Cathay Pacific, to ensure that positioning of jet bridges to aircraft doors is accomplished in a uniform and safe manner. *See id.* at ¶ 3 (Manswell at 11:23-14:11; Deposition of Jim Groark taken on September 26, 2017 ("Groark") at 20:13-21:2, annexed to the Battista Decl. as Exhibit D). British Airways' print training materials direct jet bridge operators to position the jet bridge so that there is a height differential no greater than four inches between the jet bridge floor and the door of an aircraft. *See id.* at ¶ 4 (British Airways Training Manual, designated as BA00464, BA00513 ("British Airways Training Manual"), annexed to the Battista Decl. as Exhibit E; British Airways Ground Operations Manual, designated as BA00546-BA00547 ("British Airways Ground Operations Manual"), annexed to the Battista Decl. as Exhibit F). Cathay Pacific's door opening

---

[1] A jet bridge is an aboveground device through which passengers move between a point in an airport terminal building and an aircraft. Jet bridges can be either fixed and permanently placed or mobile in nature, folding, telescoping, or pivoting from a fixed point in the airport terminal to connect to an aircraft.

training video and photographs produced by Ms. Rodriguez show that there is a height differential present between a jet bridge floor and a Boeing 777 aircraft door. *See id.* at ¶ 5 (Photographs produced by plaintiff ("Doorway Photographs"), annexed to the Battista Decl. as Exhibit G; Cathay Pacific Training Video, annexed to the Battista Decl. as Exhibit H). A height differential is necessary to allow for the opening of the aircraft door. *See id.* at ¶ 6 (Groark at 22:3-14).

In 2002, Valentina Rodriguez began working at JFK as an aircraft cleaner and was employed in that capacity with Ground Services International from 2008 up to the time of the incident. *See id.* at ¶ 7 (Deposition of Valentina Rodriguez taken on August 18, 2017 ("Rodriguez"), at 13:18-16:6, annexed to the Battista Decl. as Exhibit A). At the time of the incident, Ms. Rodriguez was working from 6:30 a.m. until 1:30 p.m., Sunday through Thursday, and each day she would board "approximately . . . five to six" aircraft with her crew. *See id.* at ¶ 8 (Rodriguez at 26:22-28:22).

The incident aircraft was a Cathay Pacific Boeing 777 which arrived at the gate around midday, at which time the jet bridge was positioned by a British Airways employee, and approximately 250 passengers and the Cathay Pacific crewmembers deplaned the aircraft without incident. *See id.* at ¶ 9 (Groark at 24:5-25:9). Following the deplaning, Ms. Rodriguez climbed the stairs from the tarmac and entered the jet bridge. *See id.* at ¶ 10 (Rodriguez at 41:12-42:15) At the time of the incident, the jet bridge floor was approximately four inches below the aircraft door. *See id.* at ¶ 11 (Rodriguez at 45:7-14; Deposition of Luz Rosa taken on September 20, 2017 ("Rosa") at 33:6-34:4, annexed to the Battista Decl. as Exhibit B).

After entering the jet bridge, Ms. Rodriguez attempted to enter the aircraft and tripped over the lip of the aircraft door and fell into the galley of the aircraft. *See id.* at ¶ 12 (Rodriguez at 44:9-46:18; Ground Service International Employee Counseling Sheet dated January 14, 2015 ("GSI

Counseling Sheet"), annexed to the Battista Decl. as Exhibit I). At the time of the incident, Ms. Rodriguez was carrying cleaning materials in each of her hands: in one hand she held a mop, rags, and spray bottle, in the other a bag of duvet covers. *See id.* at ¶ 13 (Rosa at 34:5-35:17; Rodriguez at 34:19-35:25; GSI Counseling Sheet). At the time of the incident, she looked ahead of her as she walked, not down at the spot where the jet bridge met the aircraft door. *See id.* at ¶ 14 (Rodriguez at 46:2-11). At the time of the incident, Ms. Rodriguez was one of the last members of her cleaning crew to board the aircraft; approximately nine or ten other cleaners entered the aircraft before her, all without incident. *See id.* at ¶ 15 (Rosa at 31:3-25; Rodriguez at 32:16-21, 37:25-38:25).

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Carett,* 477 U.S. 317, 322 (1986); *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008). There are no genuine factual issues when the moving party demonstrates, on the basis of the pleadings and admissible evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no reasonable jury could find in the non-movant's favor. *Yoly Farmers Corp. v. Delta Air Lines, Inc.,* No. 15 CIV. 2774 BMC, 2015 WL 4546744, at *2 (E.D.N.Y. July 28, 2015) (D.J. Cogan) (citing *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir.1996)).

The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). If this burden is met, "the non-movant must set out specific facts showing a genuine issue for trial." *Suarez v. City of N.Y.,* No. 11-CV-05812, 2015 WL 1539737, at *3 (E.D.N.Y. Mar. 31, 2015). A party may not defeat a motion for summary judgment by relying on unsupported assertions, conjecture, or surmise. *Yoly*

*Farmers Corp*, 2015 WL 4546744 at *2 (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995)). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.*

## ARGUMENT

Summary judgment is warranted because there are no material or genuine issues of fact and Ms. Rodriguez cannot produce any evidence that British Airways was negligent or that such negligence caused her injuries. The facts establish that (1) the height differential was a normal, open and obvious condition; (2) the height differential was not inherently dangerous; and (3) Ms. Rodriguez's conduct was an unforeseeable event breaking the chain of causation. Indeed, the only evidence of negligence is plaintiff's own. Plaintiff concedes that she was carrying cleaning materials for another crewmember and not looking where she was walking at the time of the accident, despite the dangers of doing so. Accordingly, plaintiff cannot establish a *prima facie* case of negligence against British Airways, and her claims should be dismissed.

## POINT I

### PLAINTIFF CANNOT ESTABLISH THAT
### BA OWED HER A DUTY

To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Saltz v. Wal-Mart Stores, Inc.*, 510 F. App'x 68, 69 (2d Cir. 2013); *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985). "While a landowner who holds property open to the public has a general duty to maintain the property in a reasonably safe condition to prevent foreseeable injuries, this duty extends only to conditions that are not readily observable." *Saltz*, 510 F. App'x at 69 (quoting *Russell v. Archer Bldg. Centers Inc.*, 631 N.Y.S.2d 102, 103 (3d Dep't.1995)). It is well-established New York law that "[an owner] has no duty to protect or

warn against an open and obvious condition which, as a matter of law, is not inherently dangerous;" under such circumstances, the condition is a warning itself. *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014); *Tagle v. Jakob*, 737 N.Y.S.2d 331, 33-34 (2001).

### A. Duty to Warn

To establish that a condition was "open and obvious," the owner must demonstrate "that the condition . . . was readily observable by the plaintiff employing the reasonable use of his senses." *Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 386 (S.D.N.Y. 2015) (citing *Powers v. 31 E 31 LLC*, 998 N.Y.S.2d 23, 25 (1st Dep't 2014)); *see also Brown v. Melville Indus. Associates*, 823 N.Y.S.2d 697 (2d Dep't 2006). While the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question, "a court may determine that a [condition] was open and obvious as a matter of law when the established facts compel that conclusion, and may do so on the basis of clear and undisputed evidence." *Saltz*, 510 F. App'x at 69; *Chaney*, 115 F. Supp. 3d at 386 (S.D.N.Y. 2015).

For example, in *Saltz*, the plaintiff suffered injuries when he tripped over a raised horizontal metal pipe when exiting a store. Judge Buchwald of the Southern District of New York granted summary judgment to the defendant, finding that defendant had established that the pipe over which plaintiff tripped was open and obvious and not inherently dangerous. *Saltz v. Wal-Mart Stores, Inc.*, No. 10 CIV. 4687 NRB, 2012 WL 811500, at *9 (S.D.N.Y. Mar. 7, 2012), aff'd, 510 F. App'x 68 (2d Cir. 2013). On appeal, the Second Circuit affirmed the District Court's decision. *Saltz*, 510 F. App'x at 68.

In *Chaney*, the plaintiff suffered injuries when he tripped over a phone charger in a Starbucks restaurant and fell. 115 F. Supp. 3d at 384. The charger was a different color from the

wall it was located on, and the court accordingly found that anyone making reasonable use of their senses would have noticed it, and ruled that it was an open and obvious condition. *Id.* at 387. Further, the court found, based on plaintiff's ability to step around the charger, and the charger's normal location, that the condition was not inherently dangerous. *Id.* "To permit a jury to find that the charger was inherently dangerous under these spare and unremarkable circumstances—where the charger was conspicuous . . . and where no evidence of dangerousness has been elicited beyond the fact that the charger rested on a floor where it could potentially be stepped upon—would effectively permit a finding of inherent dangerousness as to virtually any readily visible item . . . on which a person could potentially trip." *Id.* at 389. Accordingly, the court granted defendant's summary judgment motion, dismissing plaintiff's complaint.

Recently, the First Department affirmed summary judgment for a defendant that was sued when plaintiff tripped over a step covered in dark carpet. *Barakos v. Old Heidelberg Corp.*, 43 N.Y.S.3d 324, 325 (1st Dep't. 2016). The court found that the step was open and obvious based on (1) plaintiff's awareness of the condition from prior visits; (2) photographic evidence showing the area around the step was well-lit; and (3) plaintiff's acknowledgement that he was not looking where he was going when he tripped over the step. *Id.* Similarly, the Second Department affirmed defendant's summary judgment when plaintiff sued after tripping over a six-inch cart, stating that it was an open and obvious condition, based on its height, the bright coloration and contrast with the surrounding area. *Stern v. Costco Wholesale*, 882 N.Y.S.2d 266, 267 (2nd Dep't. 2009).

Here, the evidence shows that the height differential was an open and obvious condition to one reasonably using her senses. It had been, since approximately 2013, British Airways' internal policy to set a height differential of two to four-inches between the jet bridge and the

door of the aircraft, thereby accounting for shifting aircraft weights, and ensuring the structural integrity of the aircraft door and passenger safety. *See* Rule 56.1 Statement at ¶ 4 (Manswell at 12:14-20, 21:20-22:23; British Airways Jetbridge Training Manual, p. 49, annexed as Exhibit E; British Airways Ground Operations Manual, Section 4, pp. 7-8, annexed as Exhibit F). This policy was established in concert with Cathay Pacific, as demonstrated by the Cathay Pacific training video demonstrating an acceptable height differential between a jet bridge floor and an aircraft door:





*See id.* at ¶ 5 (Cathay Pacific Training Video); *see also* Groark at 20:13-21:2. Ms. Rodriguez had worked exclusively at JFK for over a decade, had crossed from a jet bridge onto a Cathay Pacific aircraft hundreds, if not thousands, of times before, and had never once suffered any injury traversing this height differential. *See id.* at ¶ 7 (Rodriguez at 13:18-16:6). Further, photographic evidence demonstrates that the jet bridge and the doorway to the aircraft are strongly contrasting in color, and that the area is well-lit. *See* Doorway Photographs, Exhibit G. There are also signs throughout the jet bridge, noting of uneven surfaces. *See* Manswell at 34:13-35:3. In short, a reasonable jury could not find that the height differential between the jet bridge floor and the aircraft door was not readily observable by plaintiff had she been employing the reasonable use of her senses.

## B. Duty to Maintain Premises in a Reasonably Safe Condition

A property owner owes a duty of providing a reasonably safe premises whenever the general public is invited onto the property. *See Peralta v. Henriquez*, 760 N.Y.S.2d 741 (2003). Under New York law, "the duty to maintain premises in a reasonably safe condition is analytically distinct from the duty to warn, and . . . liability may be premised on a breach of the duty to maintain reasonably safe conditions even where the obviousness of the risk negates any duty to warn." *Cohen v. Shopwell, Inc.*, 765 N.Y.S.2d 40, 42 (1st Dep't 2003). This is because "[a] contrary rule of law would permit a landowner to persistently ignore an extremely hazardous condition -- regardless of how foreseeable it might be that injuries will result from such condition -- simply by virtue of the fact that it is obvious and apparent to onlookers." *MacDonald v. City of Schenectady*, 761 N.Y.S.2d 752, 755 (3d Dep't 2003). The law dictates that an owner must maintain its property in a reasonably safe condition in view of all the

circumstances, including the likelihood of injury to others, the potential seriousness of any such injuries, and the burden of avoiding the risk. *See Basso v. Miller*, 386 N.Y.S.2d 564, 568 (1976).

An owner may establish entitlement to judgment as a matter of law where the evidence shows that a condition was open and obvious and "not inherently dangerous." *Varon*, 998 N.Y.S.2d at 434. In assessing inherent dangerousness, courts may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony. *See, e.g., Abraido v. 2001 Marcus Ave., LLC,* 4 N.Y.S.3d 43, 44 (1st Dep't 2015).

New York Courts have consistently held that a condition such as the one at issue is not inherently dangerous as a matter of law. *Maraia v. Church of Our Lady of Mount Carmel*, 828 N.Y.S.2d 525 (2d Dep't 2007) (defendant entitled to summary judgment where platform from which plaintiff fell was open and obvious and not inherently dangerous); *Bryant v. Superior Computer Outlet, Inc.*, 772 N.Y.S.2d 529 (2d Dep't 2004) (concrete wheel stop on which the injured plaintiff tripped while leaving a store carrying a box containing a computer monitor was not an inherently dangerous condition and was readily observable by the reasonable use of one's senses); *Espinoza v. Hemar Supermarket, Inc.*, 841 N.Y.S.2d 680 (2d Dep't. 2007) (summary judgment in favor of defendant store affirmed because despite the duty to maintain the premises in a reasonably safe manner, there was no duty to protect or warn against open and obvious milk crates in aisle, which as a matter of law were not inherently dangerous).

The same is true of District Courts interpreting New York law. *Glassberg v. Staples the Office Superstore E., Inc.*, No. 08-CV-2132 KAM JMA, 2010 WL 3924682, at *7 (E.D.N.Y. Sept. 13, 2010), report and recommendation adopted, No. 08-CV-2132, 2010 WL 3909206 (E.D.N.Y. Sept. 29, 2010) (granting summary judgment to defendant store when plaintiff tripped

over an unattended "u-boat" platform because condition was open and obvious and not inherently dangerous); *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09 CIV. 7830 RJS, 2012 WL 760317, at *10 (S.D.N.Y. Mar. 6, 2012), aff'd, 533 F. App'x 1 (2d Cir. 2013) (Second Circuit affirmed summary judgment for defendant when plaintiff tripped over a wheel protruding from a display rack because "a large and obvious display rack with a wheel at its base protruding no more than a few inches cannot be deemed inherently dangerous, and no reasonable jury could conclude that [defendant] violated its "general duty of care, by using and placing the rack as it did"); *Payne v. United States*, 359 F.3d 132, 138 (2d Cir. 2004) (Second Circuit affirmed the District Court's finding of no negligence on the part of the landowner where the "pref hole" at the U.S. Postal facility where plaintiff fell was "open and obvious" and premises was maintained in a reasonably safe condition); *Saltz, supra*, 510 F. App'x at 68; *Chaney, supra*, 115 F. Supp. 3d 380. Here, as in the cases cited above, the facts and evidence including plaintiff's sworn testimony all weigh in favor of British Airways and shows that the height differential between the jet bridge and the aircraft door was not, as a matter of law, inherently dangerous. Accordingly, the Court should grant summary judgment for British Airways and dismiss plaintiff's claims.

*First*, the inherent nature of the height differential between the jet bridge and aircraft door is not dangerous; just the opposite, it is a safety feature. A height differential is necessary to allow the aircraft door to open. *See* Groark at 28:22-29:13. In the event of an emergency on the aircraft requiring rapid deplaning, not having a height differential between the jet bridge and door would be an obvious hazard. Further, height differentials are necessary to accommodate the weight changes and accompanying changes in elevation that occur when an aircraft is, for instance, loaded with baggage or filled with passengers. *Id.*; *see also* Manswell at 22:11-20; *see*

11

*also* British Airways Ground Operations Manual. If the jet bridge was positioned evenly with the aircraft door, these changes might cause the jet bridge to significantly damage the aircraft door (by becoming wedged onto the jet bridge), or vice versa. *See* British Airways Ground Operations Manual. In short, the inherent nature of the height differential is not inherently dangerous; it is just the opposite, a crucial safety feature designed to protect passengers and airlines against damage.

*Second*, Plaintiff has not presented any evidence that the four-inch height differential violated any statutory provisions or industry standards. In fact, all admissible evidence shows that the four-inch height differential was optimal given the safety and training procedures developed and used by British Airways since 2013. Ms. Rodriguez's own testimony is that the condition which caused her fall was a four-inch height differential. *See* Rodriguez at 45:11-19. British Airways employees received training on jet bridge positioning in both classroom and on the job training, which had to be mastered in order for an employee to operate the jet bridge. *See* Manswell at 13:18-15:9. These training materials directed that a height differential of no greater than four inches was required, and a Cathay Pacific training video confirms this standard. *See* British Airways Training Manual; *see also* Cathay Pacific Training Video.

*Third*, photographs of the height differential demonstrate that it was readily visible to anyone boarding or leaving the aircraft and that it was not in any way concealed. *See* Doorway Photographs. The color of the doorway contrasted with the jet bridge, and the area was well-lit. *Id.* Further, signs are visible, which warn of uneven surfaces. *See* Manswell at 34:13-35:3. On the date of the incident, approximately 250 passengers and crewmembers left the aircraft before Ms. Rodriguez tripped. *See* Rule 56.1 Statement at ¶ 9 (Groark at 24:5-25:9). In addition to the passengers, approximately ten other cleaners also boarded the aircraft before Ms. Rodriguez, and

did so safely. *See id.* at ¶ 15 (Rosa at 31:3-25, 36:22-37:10; *also* Rodriguez Dep. at 32:16-21, 37:25-38:25, 160:21-161:5). If Ms. Rodriguez had been reasonably using her senses and paying attention, she would have safely boarded the aircraft, just as she had numerous times before.

## POINT II

### PLAINTIFF'S CONDUCT WAS AN
### UNFORESEEABLE SUPERSEDING EVENT
### THAT BREAKS THE CHAIN OF CAUSATION

The only evidence of causation is plaintiff's own recklessness. New York courts will not find a defendant liable where a plaintiff chooses to ignore "obvious risks and dangers . . . which could have been or should have been appreciated by the user or that can be recognized as a matter of common sense." *Stephen v. Sico, Inc.,* 654 N.Y.S.2d 449, 451 (3d Dep't 1997). A defendant may not be found liable where a plaintiff's injuries are caused by "[her] own reckless conduct," particularly if it "showed a disregard for an obvious hazard." *See Rouse v. Kuwait Airways Co., et al.,* No. 14-cv-1345WFK-JO (E.D.N.Y. September 29, 2017) (D.J. Kuntz) (quoting *Brown v. Metro. Tr. Auth.,* 281 A.D.2d 159 (N.Y. App. Div. 2001) (plaintiff's own reckless conduct in the face of an obvious hazard proximately caused the accident)). The law in New York is clear that a plaintiff who "possesses the requisite skills and awareness of the specific risks involved in the tasks being performed" but decides not to take precautions to avoid injury may not recover in an action for negligence. *Haughton v. T & J Elec. Corp.,* 765 N.Y.S.2d 664, 666-67 (3d Dep't 2003); *see also Stephen,* 654 N.Y.S.2d at 451 (granting summary judgment for defendants on negligence claim where there existed "[o]bvious risks and dangers . . . which could have been or should have been appreciated by the [plaintiff]" or could have been "recognized as a matter of common sense").

13

In *Rouse*, the plaintiff, an aircraft fueler at JFK, was seriously injured when he tripped over a fueling hose while trying to avoid being hit by a descending lift. *Rouse*, No. 14-cv-1345WFK-JO at 2. The plaintiff alleged that the defendant airline was negligent in its operation of the lift, and that this negligence caused his injuries. *Id.* The court stated that the plaintiff's conduct "had every reason to know the risk at which he put himself . . . and nevertheless opted to put himself in harm's way" and held that the plaintiff's conduct was an "unforeseeable intervening act" which severed whatever casual connection there may have been between the occurrence of the accident and the defendant's alleged negligence. *Id.* at 6.

The *Rouse* court relied on *Haughton* in its analysis. In *Haughton*, defendant's motion for summary judgment was granted and affirmed when plaintiff, a building maintenance worker, was electrocuted while performing repairs on an electrical cabinet. 765 N.Y.S.2d at 666. Plaintiff was instructed to resolve a power outage, which involved inspecting fuses in electrical cabinets. *Id.* at 665-66. Plaintiff refused to check the switches in the first cabinet he encountered because it carried a warning "that it housed 13,200 volts of electricity." *Id.* Electrical contractors had, however, run the high voltage feeder line through a different cabinet. *Id.* When plaintiff probed that cabinet, which was unlocked and did not bear a warning, "he was electrocuted, set on fire, and thrown from the cabinet, causing severe and disfiguring injuries." *Id.* Although the cabinet did not bear the same warnings as the first cabinet, the court still found, as a matter of law, plaintiff's failure to take simple precautions to avoid injury constituted "an unforeseeable intervening act, sufficient to break the casual chain, thus absolving defendant's any claimed liability." *Id.*

Similarly, here, plaintiff had worked as an aircraft cleaner in JFK for over 12 years before she fell. *See* Rule 56.1 Statement at ¶ 7 (Rodriguez at 13:18-16:6). Although Ms. Rodriguez

14

testified that she did not receive training, Ms. Rodriguez picked up on the job experience pertaining to boarding aircraft. For instance, her co-worker, Luz Rosa, testified that GSI cleaners typically looked down at the jet bridge where it meets the aircraft door when boarding. *See* Rosa at 39:10-40:4, 50:3-11.

Ms. Rodriguez, however, ignored her years of experience, as well as common sense. Not only did Ms. Rodriguez look ahead of her rather than down at the aircraft door, but she was carrying extra cleaning materials that were not necessary for her cleaning duties. *See* Rule 56.1 Statement at ¶¶ 13-14 (Rosa at 31:3-25, 34:5-35:17, 36:22-37:10; *also* Rodriguez Dep. at 32:16-21, 34:19-35:25, 37:25-38:25, 46:2-11). While helpful to her coworkers, carrying these extra materials prevented her from being able to break her fall or recover her footing. *See* Rodriguez at 47:14-17. Indeed, Ms. Rodriguez testified that she was unable to break her fall, and this was also the finding of the first investigation into Ms. Rodriguez's accident, conducted by GSI. *Id.* The GSI Counseling Sheet, filed on January 14, 2015, states that: "Information collected indicates that you did not exercise due care while stepping onto the [aircraft]. Info shows that as you stumbled and loss [sic] your footing, you were unable to recover as both hands were occupied with cleaning tools." *See* GSI Counseling Sheet.

Ms. Rodriguez had every reason to know that there would be a height differential between the jet bridge and the aircraft door, and nevertheless opted to ignore where she was walking, and carry extra materials as she entered the last aircraft of her shift. This is precisely the kind of "unforeseeable intervening act" that precludes recovery under a theory of negligence. *Haughton,* 765 N.Y.S.2d at 666. Thus, even assuming Ms. Rodriguez is able to show that British Airways owed a duty to her and that the duty was breached, Ms. Rodriguez's own negligence

proximately caused her accident. Plaintiff's conduct was so reckless in light of her experience as to constitute an intervening act which broke the chain of causation.

## **CONCLUSION**

Accordingly, because Ms. Rodriguez cannot establish that British Airways was negligent her complaint should be dismissed as a matter of law. Further, plaintiff's own reckless conduct caused her alleged injuries and her claim should be dismissed as a matter of law.

Defendant British Airways respectfully requests that summary judgment be granted and that the Court enter an Order dismissing plaintiff's complaint in its entirety, together with such other and further relief that the Court deems just and proper.

Dated:  New York, New York
       October 20, 2017

CONDON & FORSYTH LLP

By _____
      Anthony U. Battista, Esq.
      Abattista@condonlaw.com
      Jean Cooper Rose
      jrose@condonlaw.com
      7 Times Square – 18th Floor
      New York, New York 10036
      Telephone:  (212) 490-9100
      Facsimile:  (212) 370-4453

      *Attorneys for Defendant*
      BRITISH AIRWAYS PLC

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                              ) ss:
COUNTY OF NEW YORK )

        Heather L. Jackson, being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age and resides in Lynbrook, New York. That on the 20th day of October, 2017 deponent served the within **MEMORANDUM OF LAW IN SUPPORT OF BRITISH AIRWAYS PLC'S MOTION FOR SUMMARY JUDGMENT** upon:

| | |
|---|---|
| David A. Kapelman, Esq. | Nicholas Magali |
| 3 West 35th Street | Clyde & Co US LLP |
| New York, New York 10001 | 405 Lexington Ave. |
| (212) 563-2010 | New York, NY 10174 |
| | (212) 710-3911 |
| | |
| Attorney for Plaintiff | Attorney for Defendant |
| Valentina Rodriguez | Cathay Pacific Airways Limited |

via ECF and at the address designated by said attorney for that purpose by depositing same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                               _____
                                               Heather L. Jackson

Sworn to before me this
20th day of October, 2017

_____
Notary Public

LORRAINE A. LINDSAY
Notary Public, State of New York
No. 01LI16185817
Qualified in King County
Commission Expires April 21, 2020

17