UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VALENTINA RODRIGUEZ,                    :
                Plaintiff,      Civil Action No.:
                                 17-cv-03691-BMC
                                 District Judge:
                              :  Hon. Brian M. Cogan
    - against -
                                        :

BRITISH AIRWAYS PLC and CATHAY          :
PACIFIC AIRWAYS LIMITED,
                                        :
                Defendants.
------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
BRITISH AIRWAYS PLC'S MOTION FOR SUMMARY JUDGMENT
<u>AND PRECLUSION OF PLAINTIFF'S EXPERT DR. CARL BERKOWITZ</u>**

CONDON & FORSYTH LLP
7 Times Square
New York, NY 10036
(212) 490-9100
Anthony U. Battista, Esq.
Jean Cooper Rose, Esq.

Attorneys for Defendant
*British Airways PLC*

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Argument .................................................................................................................... 1

    I.    THE HEIGHT DIFFERENTIAL WAS OPEN AND OBVIOUS, AND BRITISH AIRWAYS OWED PLAINTIFF NO DUTY TO WARN ........................................................ 1

    II.   BRITISH AIRWAYS DID NOT SUBMIT CONTRADICTORY EVIDENCE ........................................................ 2

    III.  BRITISH AIRWAYS DID NOT BREACH ITS DUTY TO MAINTAIN THE PREMISES IN A REASONABLY SAFE CONDITION ........................................................................................... 3

    IV.  DR. BERKOWITZ'S REPORT SHOULD BE PRECLUDED AS IT IS UNRELIABLE AND INCLUDES LEGAL CONCLUSIONS ....................................................................... 5

Conclusion ................................................................................................................ 10

## PRELIMINARY STATEMENT

Defendant British Airways, PLC ("British Airways"), by and through its attorneys Condon & Forsyth LLP, respectfully submits this Reply Memorandum of Law in further support of its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure for an Order granting summary judgment and dismissing all claims brought by Plaintiff Valentina Rodriguez ("Ms. Rodriguez") and for an Order precluding the report and testimony of plaintiff's expert Dr. Carl Berkowitz.

## ARGUMENT

### I. THE HEIGHT DIFFERENTIAL WAS OPEN AND OBVIOUS, AND BRITISH AIRWAYS OWED PLAINTIFF NO DUTY TO WARN

British Airways is cognizant that "[Ms. Rodriguez's] awareness does not obviate the duty to maintain the premises in a reasonably safe condition." *See* Plaintiff's Brief in Opposition ("Pl. Brief") at pp. 2-3. However, under New York law, "there is no duty to warn of an open and obvious condition." Pl. Brief at p. 2, citing *Slatsky v. Great Necky Plumbing Supply, Inc.*, 815 N.Y.S.2d 201, 202 (2d Dep't 2006). Plaintiff concedes "if a hazard qualifies as 'open and obvious' as a matter of law, that characteristic . . . eliminates the property owner's duty to warn of the hazard." Pl. Brief at p. 2 (citation omitted).

To establish that a condition was "open and obvious," the owner must demonstrate "that the condition . . . was readily observable by the plaintiff employing the reasonable use of [her] senses." *Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 386 (S.D.N.Y. 2015). Courts can consider a number of different factors in making this determination, including, *inter alia*, the visibility of the condition, the irregularity of the condition, and plaintiff's awareness at the time of the incident. *See id.* at 387; *see also Barakos v. Old Heidelberg Corp.*, 43 N.Y.S.2d 324, 325 (1st Dep't 2016). Here, Ms. Rodriguez's years of experience working at John F. Kennedy

1

International Airport, the print materials prepared by British Airways, audiovisual materials used by Cathay Pacific, and photographs produced by Ms. Rodriguez all establish that the height differential between the jet bridge floor and the aircraft door was clearly visible and in its normal location, and was therefore readily observable by one employing the reasonable use of their senses. *See generally* Dkt. No. 28.

Ms. Rodriguez's citations are conclusory statements extracted from cases where it was ruled that summary judgment was improper because a condition had not been demonstrated to be open and obvious. There is no analysis of why that determination was reached, or what factors the court considered in reaching that conclusion, and Ms. Rodriguez makes no attempt to refute the cases cited by British Airways. British Airways has submitted ample evidence on undisputed facts to support a finding that the height differential was open and obvious. Ms. Rodriguez, however, has submitted no admissible evidence and fails to raise a genuine issue of fact to demonstrate that the height differential was not open and obvious. Ms. Rodriguez merely states that she did not see it, but failure to see a hazard does not prevent a court from entering summary judgment in favor of a landowner. *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09 CIV. 7830 RJS, 2012 WL 760317, at *8 (S.D.N.Y. Mar. 6, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013) (Plaintiff's assertion that she did not see the [condition] is ... insufficient to raise a material question of fact as to whether the hazard was open and obvious.). Accordingly, British Airways respectfully submits that the height differential was open and obvious, and that British Airways did not owe Ms. Rodriguez a duty to warn her of the height differential.

## II. **BRITISH AIRWAYS DID NOT SUBMIT CONTRADICTORY EVIDENCE**

Ms. Rodriguez argues that British Airways has submitted contradictory evidence pertaining to the acceptable limits for a height differential between the jet bridge floor and

aircraft door, and that this allegedly contradictory evidence "prevents British Airways from demonstrating a *prima facie* entitlement to summary judgment." Pl. Brief at p. 6. Ms. Rodriguez specifically contends that the following assertions are contradictory: (1) the characterization of a four-inch height differential as "optimal"; (2) statements in the British Airways Training Manual that a height differential between a jet bridge floor and aircraft door should be no greater than four inches; and (3) British Airways' statement that it is internal policy to set a gap of two to four inches between the jet bridge and the aircraft door. *Id.* at p. 7. These assertions are neither contradictory nor mutually exclusive. The acceptable range for a height differential is between two and four inches; this is rephrased in the British Airways Training Manual, which sets forth an uppermost limit of four inches. That British Airways considers a four-inch height differential to be optimal, while also considering a two-inch height differential to be acceptable, is in no way contradictory, and does not create a material issue of fact.

### III. BRITISH AIRWAYS DID NOT BREACH ITS DUTY TO MAINTAIN THE PREMISES IN A REASONABLY SAFE CONDITION

Ms. Rodriguez argues that British Airways has not demonstrated its entitlement to summary judgment because it has failed to demonstrate that the height differential was not inherently dangerous. Ms. Rodriguez argues that: (1) even if British Airways complied with its internal standards (which it did), "the fact that it complied with its own internal operating rule constitutes some evidence that it exercised due care, but is not conclusive on the issue of liability"; and (2) the fact that no prior accidents had occurred is merely a factor for consideration, and is not dispositive on the nature of the height differential. Pl. Brief at pp. 15, 22. British Airways agrees that these factors alone are not dispositive, but submits that the evidence, beyond compliance with internal standards and the lack of prior accidents, in the aggregate establishes its entitlement to judgment as a matter of law.

3

An owner may establish entitlement to judgment as a matter of law where the evidence shows that a condition was open and obvious and "not inherently dangerous." *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014). In assessing inherent dangerousness, courts may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony. *See, e.g., Abraido v. 2001 Marcus Ave., LLC*, 4 N.Y.S.3d 43, 44 (1st Dep't 2015). Federal and state courts in New York consistently hold that a condition such as this height differential is, as a matter of law, not inherently dangerous. In fact, courts have gone so far as to say that similar height differentials are too trivial to be actionable. *See Czochanski v. Tishman Speyer Properties, Ltd.*, 45 F. App'x 45, 47 (2d Cir. 2002) (finding a dent three-eighths of an inch deep, measuring 4 inches by 7 inches, too trivial to be actionable, considering "the time, place, and circumstances of the injury, in addition to dimensions and appearance of the defect"); *see also Sullivan v. State*, 715 N.Y.S.2d 87, 88 (3d Dep't 2000) (finding a height differential of two and one-half inches too trivial to be actionable). The admissible evidence pertaining to the above factors, in addition to British Airways' compliance with its standards and the fact that no prior accidents had occurred on the jet bridge, weighs in favor of granting summary judgment.

The inherent nature of the height differential between the jet bridge and aircraft door is not dangerous. It is a safety feature, meant to allow for quick deplaning in the event of an emergency, and also to minimize potential damage to aircraft. Photographs of the height differential demonstrate that it was readily visible to anyone boarding or leaving the aircraft and that it was not in any way concealed. *See* Dkt. No. 28-7. The color of the doorway contrasted with the jet bridge, and the area was well-lit. *Id.* Further, on the date of the incident,

approximately 250 passengers and 18 crewmembers disembarked the aircraft before Ms. Rodriguez tripped. *See* Dkt. No. 25 at ¶ 9. In addition to the passengers, approximately ten cleaners boarded the aircraft before Ms. Rodriguez, and did so safely. *See id.* at ¶ 15. British Airways also maintains that a four inch height differential does not violate any statutory provisions or industry standards. As discussed below, the standards that Ms. Rodriguez's expert, Dr. Berkowitz, relies upon are misplaced and his conclusions should be precluded. Accordingly, British Airways respectfully requests that this Court find that the height differential was an open and obvious condition which was not inherently dangerous.

### IV. DR. BERKOWITZ'S REPORT SHOULD BE PRECLUDED AS IT IS UNRELIABLE AND INCLUDES LEGAL CONCLUSIONS

Ms. Rodriguez designated Carl Berkowitz, Ph.D., as her liability expert in the field of transportation engineering. Dr. Berkowitz's "Safety Report" was served on November 9, 2017 and is attached to the Supplemental Declaration of Anthony U. Battista ("Battista Decl.") as Ex. "J" and Dkt. 35. Dr. Berkowitz was deposed on November 10, 2017, and excerpts of his deposition are attached to the Battista Decl. as Ex. "K". Dr. Berkowitz's report should be precluded as expert evidence because it is unreliable, relies on irrelevant "industry standards" and includes inadmissible legal conclusions in violation of Fed. R. Evid. 702 and 704.

#### A. Dr. Berkowitz's Report Is Based Upon Irrelevant Industry Standards

Dr. Berkowitz intends to offer expert testimony on a number of irrelevant "industry standards" and "best practices" and concludes that British Airways violated these irrelevant "industry standards." Dr. Berkowitz concludes that a height differential greater than ¼ inch between two interfacing surfaces is inherently dangerous and thus a tripping hazard. *See* Ex. "K", 56:4-57:7. He concedes that it is mechanically impossible to align the jetbridge at issue in this litigation with the aircraft door of a B-777. *See* Ex. "K", 114:9-16. He further concludes

5

that this tripping hazard can be remedied by placing a ramp/floor bridge[1] over the height differential or an individual can be stationed at the aircraft door warning of the height differential. *See* Berkowitz Dep., Ex. "K" at 114:17-115:16. There is no support for these conclusions based upon an analysis of each standard erroneously relied upon by Dr. Berkowitz.

The *Daubert* objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion."). "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. National Railroad*, 303 F.3d 256 (2d Cir. August 28, 2002); *Hatala v. Port Authority of NY & NJ., et al.,* 15 CV 09218 (S.D.N.Y Oct. 30, 2017).

Dr. Berkowitz relies on the General Duty Clause of the Occupational Safety and Health Act of 1970. *See* 29 U.S.C.A §654 (1970)("OSHA"). This clause provides that each employer shall furnish to each of his employee's employment and a space of employment which are free from recognized hazards. Dr. Berkowitz fails to explain how these OSHA guidelines are applicable since British Airways is not Ms. Rodriguez's employer. *See* Dkt. 29, p.7. It is well

---

[1] Dr. Berkowitz concludes using floor bridges is an industry best practice. *See* Ex. "J", p. 28. This conclusion is unreliable and unsupported. The photographs included in his report on p. 29 were taken while he was a passenger on a domestic flight to Philadelphia. Dr. Berkowitz testified that there was a wheelchair passenger on one flight. The difference in the equipment, aircraft type, type of travel and passenger mobility cannot support conclusions about floor bridges and industry best practices. *See* Ex. "K", 70:21-72:25.

6

settled that OSHA does not establish a standard of care for third parties. *See Steel Institute of New York v. City of New York,* 716 F.3d 31 (2d Cir. 2013)(OSHA applies only to employers and employees in workplaces). Contrary to case law, Dr. Berkowitz testified that OSHA applies to invitees on a subject premises, not just employees. *See* Berkowitz Dep., Ex. "K" at 147:6-13. The conclusions in Dr. Berkowitz's report that rely on the misplaced use of OSHA standards include conclusions #1, 3, 4, 5, 6 and 9. *See* Ex. "J" pp. 30-31. These should be precluded.

Dr. Berkowitz concludes that British Airways violated the International Air Transport Association Safety Audit of Ground Operations ("ISAGO") standards when aligning the jet bridge to the aircraft door on the date of the incident. The standard cited by Dr. Berkowitz relates to procedures to ensure the walking surfaces of jet bridges and/or stairs are inspected and free from conditions that could cause injury to passengers or ground handling personnel. A modified copy of the ISAGO Standard referenced by Dr. Berkowitz was marked during his deposition and is annexed to the Battista Decl. as Ex. "L". Dr. Berkowitz also relies on the American Society of Testing Materials ("ASTM") standard relating to the establishment of appropriate safety and health practices for walking surfaces. Reliance on the ISAGO and ASTM standards is misplaced because contrary to Dr. Berkowitz conclusions, the record reflects that British Airways had procedures in place for the safe placement of the jet bridge. *See* British Airways Ground Operations Manual (Dkt. No. 28-6) and the British Airways JETBridge Study Guide (Dkt. No. 28-5). Vague conclusory statements regarding alleged violations of standards are insufficient and should be precluded as unreliable, this includes Dr. Berkowitz's conclusions # 1, 2, 5, 10, 11 and 13 pertaining to ISAGO and ASTM. *See* Ex. "J", p. 30-31.

Furthermore, in reviewing the ISAGO standard, Dr. Berkowitz failed to consider the guidance which provides that the standard pertains to transient conditions. Ms. Rodriguez's

7

incident did not occur as a result of a transient condition. Accordingly, the ISAGO Standard referenced by Dr. Berkowitz is inapplicable in Ms. Rodriguez's case.

Dr. Berkowitz relies on Federal Aviation Administration Advisory Circular AC 150/5220-21C dated June 29, 2012. *See* Advisory Circular annexed to the Battista Decl. as Ex. "M". Although Dr. Berkowitz's report concedes that the "circular recommends the use of the guidance in this publication for the preparation of specifications for devices to assist in the boarding of passengers with *mobility impairments*," he still opines that its use is appropriate in the case of Ms. Rodriguez, an able bodied individual walking on the aircraft to perform her duties as an aircraft cleaner. Dr. Berkowitz makes the same analytical leap when addressing his reliance on standards promulgated by the American National Standards Institute ("ANSI"). The intent of the ANSI standard relied upon by Dr. Berkowitz (ANSI ICC A117.1) is to allow a person with a physical disability to independently get to, enter, and use a site. *See* Ex. K", 57:8-59:13. These standards do not apply in this case and the conclusions drawn by Dr. Berkowitz are neither helpful nor reliable as there is too great an analytical gap between the standards and the opinions proffered. *See Felixson v. Bombardier Transp. (Holdings) USA, Inc.*, 12-cv-4399, 2015 WL 5037300 (E.D.N.Y. Aug. 24, 2015)(review of Dr. Berkowitz's conclusory statements); *Johnson v. Southeastern Pennsylvania Transp. Auth., et al.*, 16-cv-03599 (E.D.P.A. Aug. 11, 2017)(Dr. Berkowitz's report consists largely of generalized statements regarding passenger safety and defendant's operations does not satisfy the reliability requirement under *Daubert*.).

### B. Dr. Berkowitz's Report Includes Inadmissible Legal Conclusions

British Airways is seeking to exclude the testimony of Dr. Berkowitz in relation to legal conclusions and argument contained in his report which exceeds the permissible scope of expert opinion testimony under the Federal Rules of Evidence. Fed. R. Evid. 702 permits testimony by

qualified expert witnesses who have specialized knowledge which will help the trier of fact to understand the evidence. When the Court inquires as to whether a proposed expert witness's testimony "will assist the trier of fact," the Court should preclude "expert testimony that usurps either (a) the role of the trial judge in instructing the jury as to the applicable law" or (b) the role of the jury in applying the law to the facts before it." *Nimely v. City of N.Y.*, 414 F.3d 381, 395 (2d Cir. 2005). Testimony that usurps either the role of the judge or the role of the jury should be precluded because it "does not aid the jury in making a decision," but "undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Id.*; *see also DiBella v. Hopkins,* 403 F.3d 102, 121 (2d Cir. 2005). Numerous statements in Dr. Berkowitz's report should be precluded as usurping the role of the judge and jury in this case:

- This fall is a result of the *violation* of a person's expectations or assumptions. (p. 18).

- In the case of British Airways and Cathay Pacific they each had a continuous *non-delegable duty* to provide safe terminal facilities, and aircraft operations. (p. 20) It was the defendants', British Airways and Cathay Pacific continuous *non-delegable duty* to provide… (p. 20).

- Upon embarking on a plane via a jetway the individual places his or her fate at the hands of the airline's staff; and it is a *reasonable expectation* that British Airways and Cathay Pacific will take *due care*. (p. 20).

- British Airways and Cathay Pacific are offering transportation services knowing that there are certain risks, and that they have a *legal obligation* to eliminate or manage these hazards…(p. 20).

- The approximate four-inch height differential between the floor of the jetway and the aircraft doorsill…was inherently dangerous and a *proximate cause* of Ms. Rodriguez's injuries. (p. 29). The following additional deviations by defendants were also the *proximate cause* of Ms. Rodriguez's injuries. (p. 30). The violation of this standard created an inherently dangerous condition which was a *proximate cause* of Ms. Rodriguez's trip and fall. (p .31).

Although Fed. R. Evid. 704(a) specifically permits an expert to proffer testimony that "embraces an ultimate issue to be decided by the trier of fact", the ultimate issue rule does not

9

enable an expert to merely tell the jury what result to reach. *See* Fed. R. Evid. 704 advisory committee's notes; *see also DiBella,* 403 F.3d at 121(expert witness statements embodying legal conclusions exceed the permissible scope of opinion testimony under Federal Rules of Evidence). Fed. R. Evid. 702 and 704 categorically reject expert testimony that inappropriately draws legal conclusions and makes legal arguments. Because Dr. Berkowitz's opinions and conclusions above are legal conclusions and argument, they should be excluded as evidence.

## CONCLUSION

Based upon the foregoing, defendant BRITISH AIRWAYS PLC respectfully requests an Order granting summary judgment in favor of BRITISH AIRWAYS PLC dismissing plaintiff's complaint and an Order that the report and testimony of Dr. Carl M. Berkowitz, Ph.D., be excluded from consideration at summary judgment or trial. Alternatively, BRITISH AIRWAYS PLC respectfully requests the Court to conduct a *Daubert* hearing to determine if Dr. Berkowitz is a reliable expert in this case.

Dated: New York, New York
November 17, 2017

CONDON & FORSYTH LLP

By _____
Anthony U. Battista, Esq.
Abattista@condonlaw.com
Jean Cooper Rose
jrose@condonlaw.com
7 Times Square – 18th Floor
New York, New York 10036
Telephone: (212) 490-9100
Facsimile: (212) 370-4453
*Attorneys for Defendant*
BRITISH AIRWAYS PLC

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

Heather L. Jackson, being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age and resides in Lynbrook, New York. That on the 17th day of November, 2017 deponent served the within **REPLY MEMORANDUM OF LAW IN SUPPORT OF BRITISH AIRWAYS PLC'S MOTION FOR SUMMARY JUDGMENT AND PRECLUSION OF PLAINTIFF'S EXPERT DR. CARL BERKOWITZ** upon:

David A. Kapelman, Esq.
3 West 35th Street
New York, New York 10001
(212) 563-2010

Attorney for Plaintiff
Valentina Rodriguez

Nicholas Magali
Clyde & Co US LLP
405 Lexington Ave.
New York, NY 10174
(212) 710-3911

Attorney for Defendant
Cathay Pacific Airways Limited

via ECF and at the address designated by said attorney for that purpose by depositing same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_Heather L. Jackson_
Heather L. Jackson

Sworn to before me this
17th day of November, 2017

_Lorraine A. Lindsay_
Notary Public
LORRAINE A. LINDSAY
Notary Public, State of New York
No. 01LI6185817
Qualified in King County
Commission Expires April 21, 2020

11