```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
VALENTINA RODRIGUEZ,                                      :
                                                          :
                              Plaintiff,                  :   **MEMORANDUM DECISION AND**
                                                          :   **ORDER**
                  - against -                             :
                                                          :   17-CV-03691 (BMC)
                                                          :
BRITISH AIRWAYS PLC and CATHAY                            :
PACIFIC AIRWAYS LIMITED,                                  :
                                                          :
                              Defendants.                 :
                                                          :
----------------------------------------------------------X
```

**COGAN**, District Judge.

Plaintiff, an aircraft janitorial worker, suffered injuries when she tripped and fell while boarding an aircraft as part of her employment duties at John F. Kennedy International Airport ("JFK"). She brought this suit against Cathay Pacific Airways Limited ("Cathay"), which operated the flight, and against British Airways PLC ("BA"), which provided aircraft cleaning services to Cathay.

BA and Cathay have separately moved for summary judgment, contending that an expert opinion upon which plaintiff relies is inadmissible under Federal Rule of Evidence 702. BA and Cathay also asserted cross-claims against each other, and Cathay has moved for summary judgment against BA, arguing that it is entitled to indemnification against plaintiff's claims in the event that it is found to be vicariously liable or to have acted negligently.

For the reasons discussed below, the Court grants defendants' summary judgment motions against plaintiff, and excludes the report of plaintiff's expert. Because neither defendant is liable to plaintiff, Cathay's motion seeking indemnification from BA is denied as moot.

## BACKGROUND

The following undisputed facts are viewed in the light most favorable to plaintiff.

Cathay and BA were parties to a Standard Ground Handling Agreement (the "SGHA"), pursuant to which BA provided enumerated ground handling services to Cathay flights, including interior cleaning of Cathay aircraft and control and operation of jet bridges used to connect Cathay flights to the terminal. A jet bridge – familiar to most travelers – is the moveable arm of the terminal building that connects a parked aircraft to the terminal. A height differential between the jet bridge floor and the aircraft floor is necessary to allow for the opening of the aircraft door; if the two were perfectly level, the aircraft door would not be able to swing open, as its bottom would run against the jet bridge floor.

The height of the aircraft floor fluctuates as the weight of the aircraft changes with the unloading of cargo and passengers. Jet bridges are equipped with an "auto leveler" that can keep the height differential between the jet bridge floor and the aircraft constant. Generally, the edge of the jet bridge (where it meets the aircraft) is painted bright yellow. BA uses internal training policies and guidelines to guide the positioning of jet bridges against aircraft doors. Those materials require a height differential of no greater than four inches. BA's internal policy is to set a height differential between two and four inches. Cathay's door opening training materials also show a height differential between the jet bridge and aircraft floors.

BA subcontracted with plaintiff's employer, Ground Services International ("GSI"), to provide cleaning services for Cathay aircraft at JFK. Plaintiff had worked as an aircraft cleaner at JFK from 2002, and, at the time of the accident, cleaned approximately five to six aircraft each day.

On January 14, 2015, plaintiff, as part of a GSI cleaning crew, was boarding a Cathay aircraft at JFK. Cathay did not have exclusive use of the gate at which the flight arrived. Other airlines used the gate, and Cathay also operated flights from different gates.

While plaintiff was crossing from the jet bridge to the aircraft, the floor of the jet bridge was approximately four inches below the aircraft floor. In attempting to enter the aircraft, plaintiff tripped over the lip of the aircraft door and fell into the galley of the aircraft. At the time of her fall, plaintiff was carrying cleaning materials in each hand. In one hand, she held a mop, rags, and a spray bottle; in the other, a bag of duvet covers. Plaintiff was looking ahead, and not down, as she attempted to enter the aircraft. Approximately nine or ten members of the cleaning crew had already boarded the aircraft when plaintiff fell, and approximately 250 passengers and 18 crew members had deplaned the aircraft. No party has put forward evidence of any incident with any of them. As a result of her fall, plaintiff suffered serious injuries.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." St. Pierre v. Dyer, 208 F.3d 394,

404 (2d Cir.2000) (quoting Fed.R.Civ.P. 56(e)). To defeat a motion for summary judgment, the non-movant must come forward with specific evidence showing that a genuine issue of material fact exists. West-Fair Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir. 1996). A genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 141 (2d Cir. 2012). As a result, "[w]here no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citation omitted). However, it is well settled that on a motion for summary judgment, the court must "construe the evidence in the light most favorable to the non-moving party." Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999). At summary judgment, "the court's review of the record is limited to facts that would be admissible at trial." Melini v. 71st Lexington Corp., No. 07 CIV. 701, 2009 WL 413608, at *3 (S.D.N.Y. Feb. 13, 2009).

Plaintiff served on defendants an expert report by Dr. Carl Berkowitz. Plaintiff also filed an affidavit by Dr. Berkowitz in support of her opposition to defendants' motions for summary judgment. Defendants moved to preclude Dr. Berkowitz's opinion. Before turning to defendants' motions for summary judgment, the Court has to resolve the admissibility of Dr. Berkowitz's proffered testimony. See Donnelly v. Ford Motor Co., 80 F. Supp. 2d 45, 47-48 (E.D.N.Y. 1999) ("In determining a summary judgment motion, the court may first need to determine the admissibility of expert testimony.").

"The standards governing the admissibility of expert testimony are set forth in Rule 702 of the Federal Rules of Evidence, and are further clarified by Daubert v. Merrell Dow

Pharm., 509 U.S. 579, 113 S.Ct. 2786 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999)." Hilaire v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 223, 233 (E.D.N.Y. 2014). Under Rule 702, a "witness ... qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if ... the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

Under Daubert, courts have a "gatekeeping responsibility" of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 580. The proponent of the expert testimony bears the burden of establishing the admissibility of such testimony…by a preponderance of the evidence." Bee v. Novartis Pharm. Corp., 18 F. Supp. 3d 268, 299-300 (E.D.N.Y. 2014). Here, defendants do not dispute Dr. Berkowitz's qualifications as an expert. Instead, their argument turns on the reliability of his methodology and the helpfulness of his opinion to the fact finder.

An expert opinion must "be of assistance to the trier of fact in evaluating the evidence." Hilaire, 54 F. Supp. 3d at 242. Courts may exclude expert testimony that would complicate, instead of assist, the fact finder's decision on "a simple question for which" it would need no help. United States v. One Parcel of Prop. Located at 31-33 York St., Hartford, Conn., 930 F.2d 139, 141 (2d Cir. 1991). Additionally, "[i]n order for expert testimony to assist the trier of fact to understand the evidence or to determine a fact in issue, the testimony must not only be reliable but must be relevant in that it 'fits' the facts of the case." Ford Motor Co., 80 F. Supp. 2d at 50 (internal citations and quotations omitted). Accordingly, "[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to

existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 137, (1997).

Dr. Berkowitz's opinion needlessly complicates the dispute between the parties and improperly relies on standards that are inapplicable to the circumstances at issue here. His opinion is therefore more likely to confuse the factfinder, rather than assist it. Dr. Berkowitz relies on five standards: the General Duty Clause of the Occupational Safety and Health Administration ("OSHA"); an Advisory Circular on Aircraft Boarding Equipment promulgated by the Federal Aviation Administration ("FAA"); the American Society of Testing Materials' ("ASTM") Standard Practice for Safe Walking Surfaces; the International Air Transport Association's ("IATA") Safety Audit of Ground Operations Standards ("ISAGO"); and safety guidelines published by the American National Standards Institute ("ANSI")). Each of these recommendations or standards, he contends, compels the conclusion that the height differential was unsafe. However, his reliance on each of these standards is problematic.

First, the OSHA standard merely requires an employer to "furnish to each of his employees employment and a place of employment which are free from recognized hazards." This general and abstract requirement would not help a factfinder determine the narrow question of whether the height differential between the jet bridge and the aircraft floor was a dangerous condition. It does not support Dr. Berkowitz's opinion. It simply poses the question.

Second, the FAA circular that Dr. Berkowitz cites specifically states that it is intended to provide guidance "for the preparation of specification for devices to assist in the boarding of passengers with mobility impairments." Plaintiff, however, was an able-bodied non-passenger, rendering this standard unhelpful and more likely to confuse than assist the factfinder.

Third, the ASTM standard provides that "[a]djoining walking surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable." That seems fair enough for architects constructing a building with rooms, hallways, and stairwells, but defendants have explained, and plaintiff does not dispute, that a height differential between the jet bridge and the aircraft floor must exist to permit door clearance.

Fourth, the IATA standards only require that procedures be in place "to ensure the walking surfaces of passenger boarding bridges and/or stairs are inspected and free from conditions that could cause injury to passengers or ground handling personnel." It is undisputed that BA had such procedures in place.

Finally, BA and plaintiff dispute if the ANSI standard is intended to address the needs of people with disabilities or not, but even if it applies to the general public, that standard alone (requiring slopes for changes in height between two surfaces beyond a specific threshold) is an insufficient basis for Dr. Berkowitz's conclusions.

In sum, what Dr. Berkowitz has done is take a number of safety standards that are either inapplicable or, at best, hortatory and vague, and conclude that the height differential here was excessive. It is a conclusion looking for grounds, rather than grounds leading to a conclusion. This is a wholly inadequate basis on which to present his opinion to a finder of fact.

Turning to defendants' motions for summary judgment, New York substantive law applies in this diversity case. To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (internal quotations omitted).

The threshold question, therefore, is whether defendants owed a duty to plaintiff to protect her against or warn her of the allegedly dangerous condition – the height differential. "The existence and extent of a duty is a question of law" that can be resolved at summary judgment. Alnashmi v. Certified Analytical Grp., Inc., 89 A.D.3d 10, 13, 929 N.Y.S.2d 620, 623 (2nd Dep't 2011). Although she does so somewhat opaquely, plaintiff argues that BA owed her a duty of care under the theory of premises liability and that Cathay owed her a duty of care by inviting her into a place of public assembly and by virtue of being a common carrier. For the reasons discussed below, neither defendant owed plaintiff a duty that encompassed warning her about or changing the height differential. This is because the differential was open, obvious, and not inherently dangerous condition.

Generally, New York law provides that "landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." Tagle v. Jakob, 97 N.Y.2d 165, 168 (2001). However, a defendant in a premises liability action can establish "its entitlement to judgment as a matter of law by demonstrating that the [alleged dangerous condition] was open and obvious and not inherently dangerous." Maraia v. Church of Our Lady of Mount Carmel, 36 A.D.3d 766, 767, 828 N.Y.S.2d 525, 526 (2nd Dep't 2007). See also Glassberg v. Staples the Office Superstore E., Inc., No. 08-CV-2132, 2010 WL 3924682, at *3 (E.D.N.Y. Sept. 13, 2010), report and recommendation adopted, No. 08-CV-2132, 2010 WL 3909206 (E.D.N.Y. Sept. 29, 2010) ("[T]here is no duty to protect or warn a customer against the risk of a condition that is open and obvious and, as a matter of law, not inherently dangerous; under such circumstances, the condition is a warning itself."). In other words, the scope of a defendant's duty does not include protecting against open and obvious conditions that are not inherently dangerous. The below analysis takes each prong in turn.

8

First, the height differential between the jet bridge and the aircraft was open and obvious. "A court may determine that a risk was open and obvious as a matter of law when the established facts compel that conclusion and may do so on the basis of clear and undisputed evidence." Tagle, 97 N.Y.2d at 169 (internal citations omitted). Although this is typically a question of fact, "a court may resolve this question when the established facts compel the conclusion that the hazard was open and obvious." Matteo v. Kohl's Dep't Stores, Inc., No. 09 CIV. 7830, 2012 WL 760317, at *7 (S.D.N.Y. Mar. 6, 2012).

A condition is open and obvious if it "could have been or should have been appreciated by the user or [if it] can be recognized as a matter of common sense." Stephen v. Sico Inc., 237 A.D.2d 709, 710, 654 N.Y.S.2d 449, 451 (3rd Dep't 1997) (internal citations omitted). Accordingly, the touchstone of analysis in holding a condition to have been open and obvious is whether "it was readily observable through the use of one's senses." Saltz v. Wal-Mart Stores, Inc., No. 10 CIV. 4687, 2012 WL 811500, at *7 (S.D.N.Y. Mar. 7, 2012). See also Brown v. Metro. Transit Auth., 281 A.D.2d 159, 161, 721 N.Y.S.2d 56 (1st Dep't 2001) (defendants had no duty to warn of a danger "that [could have been] easily recognized or discovered by the normal use of one's senses.").

The extent to which a condition is distinguished from its surroundings is relevant when deciding if it is open and obvious. See e.g. Glassberg, 2010 WL 3924682, at *1 ("Both the handle and platform were *silver* in color, and the platform's wheels elevated it a few inches off of the store's *black*, carpeted floor.") (emphasis added). For example, the court in Saltz held as a matter of law that horizontal pipes on the ground of a parking lot were open and obvious, noting that the pipes were painted a different color from the floor on which they lay. 2012 WL 811500, at *7. Similarly, the court in Chaney v. Starbucks Corp., 115 F. Supp. 3d 380, 387 (S.D.N.Y.

9

2015), held that a "white charger square offset against [a] store's orange-colored floor, was open and obvious." (internal quotations omitted).

Significantly, a plaintiff's actual observation of an open and obvious condition is immaterial; the crucial inquiry is if the plaintiff *could* have seen it. See Glassberg, 2010 WL 3924682, at *5 ("[U]nder New York law, whether a plaintiff observed a condition prior to tripping over it is immaterial to the question of whether the condition was open and obvious."); Matteo, 2012 WL 760317, at *8 ("[A] plaintiff's failure to see a hazard does not necessarily preclude the entry of summary judgment in favor of a landowner.").

Courts in New York also consider both "the reasonable expectations of the parties and society generally." Id. at *7. For example, the court in Cupo v. Karfunkel, 1 A.D.3d 48, 51, 767 N.Y.S.2d 40, 42-43 (2nd Dep't 2003), granted summary judgment to the defendant, in part because of the specific expectations of the plaintiff, noting that "the evidence submitted on the motion established…*that the plaintiff often traversed the sidewalk*" on which she tripped (emphasis added). Likewise, in similar circumstances to those alleged here, the court in Barakos v. Old Heidelberg Corp., 145 A.D.3d 562, 563, 43 N.Y.S.3d 324, 325 (1st Dep't 2016), granted summary judgment to a defendant when the plaintiff "tripped over a step covered in dark carpet, while exiting defendants' restaurant." There, the court noted that the "[p]laintiff testified that he was aware that the step was there from his prior visits." Id. The court in Glassberg, 2010 WL 3924682, at *1, also noted the number of times the plaintiff had visited the site of the dangerous condition she alleged prior to her accident ("[Plaintiff] had been there between ten and twenty times before this visit."). The court in Chaney, 115 F. Supp. 3d at 388, looked to general, societal awareness of a potentially dangerous condition when it noted that phone and computer "chargers today are in fact ubiquitous in public places in this country… A customer in the

10

seating area of [a coffee shop] would have every reason to expect charger cords belonging to other customers to be in use, and potentially to rest on the floor."

Here, the undisputed facts compel the conclusion that the height differential was open and obvious. First, photographs of the site of the accident show that the height differential between the jet bridge and the aircraft was immediately apparent; simply put, it was practically impossible to miss. Teal paint on the exterior of the aircraft beneath the lip of the aircraft doorway was set off from the dark color of the jet bridge floor, highlighting the difference in level. Furthermore, the top surface of the lip of the entrance was chrome, as opposed to the dark coloring of the floors of both the jet bridge and the aircraft. The area was also well-lit. Finally, a photograph of the site taken several feet from the entrance to the aircraft shows that the height differential was visible from a considerable distance down the jet bridge.

Second, plaintiff's own deposition testimony indicates that she had crossed hundreds, if not thousands, of jet bridges during the course of her employment at JFK. Five to six times a day, five days a week, for nearly twelve years, plaintiff encountered height differentials between jet bridge floors and aircraft doorways. The existence of a height differential could reasonably be expected to come as no surprise to her; it was, instead, a ubiquitous fact of her daily performance of her job. Third, the fact that plaintiff might not have seen the height differential because she was looking ahead is immaterial; the inquiry is whether she *could* have seen the condition. Given that the height differential was immediately apparent and that plaintiff encountered similar differentials nearly daily for over a decade, the condition was open and obvious.

The next question is whether the height differential was inherently dangerous. Courts in New York routinely find that conditions similar to the one at issue here are not inherently

dangerous and that defendants in such suits are entitled to summary judgment. See e.g., Bryant v. Superior Computer Outlet, Inc., 5 A.D.3d 343, 344, 772 N.Y.S.2d 529 (2nd Dep't 2004) ("concrete wheel stop on which the injured plaintiff tripped while leaving a store" was not inherently dangerous); Gibbons v. Lido, Point Lookout Fire Dist., 293 A.D.2d 646, 647, 740 N.Y.S.2d 440, 441 (2nd Dep't 2002) (parking blocks over which plaintiff tripped were not inherently dangerous); Chiranky v. Marshalls, Inc., 273 A.D.2d 266, 266, 708 N.Y.S.2d 699, 700 (2nd Dep't 2000) ("bottom rail of a mobile clothes rack located in an aisle in the defendant's department store" on which plaintiff tripped was not inherently dangerous); Dominitz v. Food Emporium, Inc., 271 A.D.2d 640, 640, 706 N.Y.S.2d 475, 475 (2nd Dep't 2000) ("concrete curb of an island in a parking lot owned by the defendant" on which plaintiff tripped was not inherently dangerous).

Pedestrians navigate minor alterations in height and small obstructions similar to the one at issue here as a matter of course. Buildings have steps and portions of floors may be raised or lowered relative to other areas. The simple fact that two floor surfaces are not even does not render the existence of a difference between them "inherently dangerous." This conclusion is buttressed by the fact that a height differential similar to that over which plaintiff tripped was apparently safely navigated by approximately 250 passengers and crew disembarking the aircraft, and then by approximately ten other cleaners boarding the aircraft. As discussed above, plaintiff has boarded hundreds of aircraft via jet bridges during the course of her employment at JFK. She points to no other instances in which she, or, indeed, anyone else, tripped while traversing the height differential between a jet bridge and aircraft floor. Presumably, if the condition were inherently dangerous, she could identify at least another instance in which someone was harmed by a similar height differential.

Therefore, because the condition was both open and obvious and not inherently dangerous, BA owed no duty to plaintiff to warn her of or protect her against it under a premises liability theory.[1]

The Court need not resolve the question of whether Cathay exercised sufficient ownership or control over the jet bridge to give rise to a duty to warn of or protect against the height differential under a premises liability theory. Cathay correctly asserts that "liability for a dangerous or defective condition on real property must be predicated upon ownership, occupancy, control, or special use of that property." Suero-Sosa v. Cardona, 112 A.D.3d 706, 707, 977 N.Y.S.2d 61 (2nd Dep't 2013). Cathay argues that it had nothing to do with the jet bridge, which was, it claims, wholly under the control of BA. However, because the height differential between the jet bridge and the aircraft was both open and obvious and not inherently dangerous, neither defendant can be found to have owed plaintiff a duty to warn her of or protect her against it under a premises liability theory.

Plaintiff also claims that Cathay owed her a duty under a common carrier theory. As a threshold matter, it is axiomatic that the duty of a common carrier applies only to passengers. See Voccia v. United States, No. 12CV05909, 2017 WL 1194652, at *6 (E.D.N.Y. Mar. 31, 2017) ("Under New York law, a transportation provider, like an operator of a courtesy shuttle, has a duty to exercise reasonable care for the safety of its *passengers*.") (emphasis added); Vumbaca v. Terminal One Grp. Ass'n L.P., 859 F. Supp. 2d 343, 370 (E.D.N.Y. 2012)

---

[1] Similarly, if the jet bridge is interpreted as a means of ingress or egress from the aircraft (whether considered as a place of public assembly or not), neither defendant owed plaintiff a duty to protect her against or warn her of the height differential, because the differential was both open and obvious and not inherently dangerous. See Niles v. 1109-1113 Manhattan Ave. Partners, LLC, No. 13-CV-5427, 2015 WL 6674833, at *2 (E.D.N.Y. Oct. 30, 2015).

(A common carrier has an obligation "to conserve the safety, convenience and comfort of its *passengers*.") (emphasis added).

Even if, however, plaintiff had somehow overcome this barrier to her common carrier theory of liability, her argument fails. Although "the duty of care imposed on a common carrier with respect to its passengers requires not only that it keep the transportation vehicle safe, but also that it maintain a safe means of ingress and egress for the use of its passengers," <u>Bingham v. New York City Transit Auth.</u>, 8 N.Y.3d 176, 180, 832 N.Y.S.2d 125, 127 (2007), New York courts have declined to extend this duty of care to common areas in a multi-carrier facility. <u>Diaz v. Am. Airlines, Inc.</u>, No. 1:13-CV-7813, 2015 WL 4503649, at *7 (S.D.N.Y. July 23, 2015). Instead, the law in New York is clear: common carriers have a duty to safely maintain "areas that serve primarily for ingress and egress to a subway or other similar station that is *served by a single carrier*." <u>Bingham</u>, 8 N.Y.3d at 181 (emphasis added). Because the jet bridge was used by several different airlines, Cathay's duty as a common carrier did not make it liable for the condition[2] of a means of ingress and egress – the jet bridge – used by other carriers, as well.

Finally, plaintiff contends that BA is not entitled to summary judgment because of allegedly contradictory BA policies regarding height differentials. This argument is confused and unconvincing. Plaintiff claims that the following assertions, contained in various BA materials, are contradictory: 1) that a four-inch height differential is "optimal;" 2) that the height differential between the jet bridge floor and aircraft door should be no more than four inches; and 3) that BA's internal policy requires a height differential of between two and four inches. I see no contradiction between these statements. They announce that the acceptable range for a height

---

[2] As discussed above, the Court finds that condition to be open and obvious and not inherently dangerous.

differential between a jet bridge and aircraft door is two to four inches; four inches is preferred; and four inches is not to be exceeded.

## CONCLUSION

Defendants' motions for summary judgment are granted. The Clerk is directed to enter judgment, dismissing the complaint.

**SO ORDERED.**

Dated: Brooklyn, New York	U.S.D.J.
December 11, 2017